STATE, Appellant v. CUNDY, Respondent

(201 N. W. 2d 236)

(File No. 11084. Opinion filed October 20, 1972)

Order denying petition for rehearing November 29, 1972

**Jon Mattson,** State's Atty., Deadwood, for plaintiff and appellant.

**Overpeck, Mueller & Bennett,** Belle Fourche, for defendant and respondent.

HANSON, Presiding Judge.

An Information filed by the State's Attorney of Lawrence County charges the defendant, Richard L. Cundy, with the crime of grand larceny alleged to have been committed on June 11, 1971 by feloniously taking a calf belonging to the Spearfish Valley Ranch, Inc. Prior to trial defendant moved to suppress certain evidence upon the grounds it was obtained as the result of an unlawful search and seizure. The trial court ordered the evidence suppressed and the State with the permission of this Court has appealed from such intermediate order.

The evidence introduced at the suppression hearing shows that defendant Cundy is a rancher who owns three separate ranch properties, viz., one near St. Onge in Lawrence County, one near Spearfish in Lawrence County which adjoins a ranch owned by Spearfish Valley, Inc., and the other near Camp Crook in Harding County.

On June 1, 1971 defendant and his hired hand, Clee Brakke, gathered up some of defendant's hereford cattle at the Spearfish ranch and trailed them three or four miles over to the St. Onge

ranch. Included in the herd was a black angus cow and calf. The black cow was branded IVM which was a registered brand issued to Spearfish Valley, Inc. Defendant told Brakke they would go ahead and trail the angus cow and calf home along with the herd and Spearfish Valley Ranch could come there and pick them up.

On arrival at the St. Onge ranch the cattle were left together in a pasture. A few days afterwards Brakke noticed the black angus cow and calf had been moved to a separate pasture near the corrals. Later he noticed the black calf was separated from its mother and was in a chicken house with a hereford cow.

On June 10, 1971 defendant was preparing to go to the Camp Crook ranch to do some branding and he instructed Brakke to haul the hereford cow and black calf up there the next morning. Following that conversation Brakke called Frank Carr, the manager of Spearfish Valley Ranch, who came over to the St. Onge ranch and identified his black cow and calf. Afterwards, Carr returned home and called his private attorney and the Lawrence County Sheriff's office. Deputy Sheriffs, Charles Crotty and Gerald Perrett, responded to the call. They met with Carr at the Spearfish Valley Ranch and then proceeded to defendant's St. Onge ranch with Carr and his employee, Jerry Fish. When they arrived at the St. Onge ranch Brakke opened the gate and let them in the corral. The defendant was not at home and was not present. When Brakke brought the black cow and calf into the corral the calf immediately ran to the cow, mothered up, and started sucking. At the suggestion of Carr, a dime and quarter were inserted under the flesh of the calf on the inside of its right front leg. This identification measure was performed by Carr, Fish, and Brakke. The calf was then taken back to the barn by Brakke and it was suggested by Carr to wait and see if the calf would be taken to Camp Crook and branded.

The next day Brakke followed defendant's instructions and hauled the black calf to Camp Crook. A few days later a search warrant was obtained authorizing a search of the Camp Crook

ranch where the black calf was found, identified and seized. It had been branded with defendant's brand. Defendant was subsequently arrested and charged with grand larceny.

■ The Fourth Amendment to the United States Constitution and Art. VI, § 11 of our State Constitution both declare that "The right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures, shall not be violated * * *." The term "houses" used in these constitutional provisions "has been enlarged by the courts to include the 'curtilage' or ground and buildings immediately surrounding a dwelling, formerly usually enclosed. The reach of the curtilage depends on the facts of a case." Rosencranz v. United States, 1 Cir., 356 F.2d 310. In the present case there is no question the protective reach of the curtilage extended to the corrals on the St. Onge ranch as this was defendant's home ranch where he resided. State v. Cochrane, 84 S.D. 527, 173 N.W.2d 495; Walker v. United States, 5 Cir., 225 F.2d 447.

■ An officer may legally search premises without a warrant under limited circumstances such as (1) an emergency where there is no time to get a warrant and the situation demands immediate action, McDonald v. United States, 335 U.S. 451, 69 S.Ct. 191, 93 L.Ed. 153, (2) an officer in hot pursuit of an escaping suspect, Chappell v. United States, 119 U.S. App.D.C. 356, 342 F.2d 935, (3) when an officer knows that contraband is threatened with immediate destruction or removal, United States v. Frierson, 7 Cir., 299 F.2d 763, and (4) incidental to a valid arrest. In nearly all other situations a warrant is required to make a physical search of a dwelling or its curtilage unless voluntarily consented to.

■ Ordinarily, consent to a warrantless search may be given only by the person with the primary right to the occupation, possession, or control of the premises or, in his absence, by someone with specific authority to do so. This rule is exemplified in Stoner v. California, 376 U.S. 483, 84 S.Ct. 889, 11 L.Ed.2d 856, in which the court held the warrantless search of a suspect's hotel room, without the suspect's consent, did not become lawful because it was conducted with the consent of the hotel night clerk. The court held there was no substance "to the claim that the

search was reasonable because the police, relying upon the night clerk's expressions of consent, had a reasonable basis for the belief that the clerk had authority to consent to the search. Our decisions make clear that the rights protected by the Fourth Amendment are not to be eroded by strained applications of the law of agency or by unrealistic doctrines of 'apparent authority.' "

■ In the present case the evidence does not indicate the employee, Clee Brakke, had specific or delegated authority to authorize a warrantless search of his employer's premises by the sheriff's deputies. Defendant Cundy, the owner, would not be bound by his employee's consent under the doctrine of apparent authority. United States v. Ruffner, 4 Cir., 51 F.2d 579.

■■ The crucial question remains as to whether or not Deputy Sheriffs, Crotty and Perrett, in fact conducted an unreasonable search of defendant Cundy's premises. The constitutional provisions prohibiting unreasonable searches and seizures only protect against action by the government, its officials and agents, and have no application to the wrongful or unauthorized acts of private individuals. 79 C.J.S. Searches and Seizures § 5c, p. 783. Therefore, defendant cannot be heard to object, on this ground, to the admission of evidence obtained by a search of his premises by individuals such as Clee Brakke, Frank Carr, and Jerry Fish. Wharton's Criminal Evidence, 12th Ed., Vol. 2, § 700, p. 706; Burdeau v. McDowell, 256 U.S. 465, 41 S.Ct. 574, 65 L.Ed. 1048.

■ A "search" in the constitutional sense is an examination of a man's house, buildings, premises, or person, for the purpose of discovering contraband, illicit, or stolen property, as some evidence of guilt to be used in the prosecution of a criminal action for some crime with which he is, or may be, charged. 79 C.J.S. Searches and Seizures § 1, p. 775. It implies a "prying into hidden places for that which is concealed and that the object searched for has been hidden or intentionally put out of the way." Weltz v. State, Alaska, 431 P.2d 502; People v. Eddington, 23 Mich.App. 210, 178 N.W.2d 686. It also implies an exploratory investigation or an invasion and quest, looking for or seeking out. State v. Nelson, 285 Minn. 304, 173 N.W.2d 349.

■ In the present action all the evidence ordered suppressed was discovered by private individuals before the law enforcement officials were called. The affidavit for the search warrant of the Camp Crook ranch was made by one of the private individuals.

The deputy sheriffs merely responded to a call by the owner of the calf to investigate an alleged felony. They justifiably entered upon defendant's property in the performance of their duties at the request of the owner of the calf and with the permission of defendant's hired hand. See 52 Am.Jur., Trespass, § 41, p. 868. They did not request permission to conduct a search and Brakke did not grant them permission. They did not enter any buildings and did not pry into hidden places for concealed objects. An exploratory search was never attempted. They merely stood by as passive observers to actions of private individuals. Unlike the case of Raymond v. Superior Court, 19 Cal.App.3d 321, 96 Cal.Rptr. 678, the private individuals cannot be considered agents of the officials as they were not acting at the suggestion of or in cooperation with the officers. See also Coolidge v. New Hampshire, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564.

In ordering the evidence suppressed, the trial court relied largely upon the case of Brinlee v. State, Okl.Cr., 403 P.2d 253, in which the law enforcement officials entered upon the farm of defendant Brinlee without invitation, without a search warrant, as trespassers, and armed only with their suspicion. A very thorough search of the entire premises was made. The officials returned later with other officers and conducted a second search. They then returned to town and obtained a search warrant supposedly to cover the prior searches. In concluding the evidence was unlawfully obtained the court said "These four experienced police officers were searching for stolen cattle and from their testimony, they had reason to believe these cattle to be on the defendant Brinlee's place or property. They should have obtained a search warrant before entering and searching this property. This they did not do; they entered as trespassers, and all evidence obtained was done so unlawfully."

The facts in the Brinlee case are not comparable. In the present case the deputy sheriffs did not make a surreptitious entry upon or search of defendant's premises. At the time they were there the crime of grand larceny had not been consummated and would never be consummated if defendant returned the calf to its rightful owner. A search warrant could not be obtained under the circumstances as it would be untimely and no probable cause existed. As the Nebraska Court concluded in State v. Howard, 184 Neb. 274, 167 N.W.2d 80, "The entry of these officers was not a search; at most, it was a technical trespass, more in the nature of an inspection, made in the proper performance of their duties, reasonable and justified by the circumstances." Likewise, there was nothing odious or unreasonable about the conduct of the officers in the present case. Their mere presence on defendant's premises did not unconstitutionally taint the evidence discovered and obtained solely by and through the efforts of private individuals.

Reversed.

All the Judges concur.