STATE of South Dakota, Plaintiff
and Respondent,

v.

Robert G. LUNA, Defendant
and Appellant.

No. 11897.

Supreme Court of South Dakota.

Argued Sept. 13, 1977.

Decided March 29, 1978.

John P. Guhin, Asst. Atty. Gen., Pierre, for plaintiff and respondent; William J. Janklow, Atty. Gen., Pierre, on the brief.

Ralph C. Hoggatt, Deadwood, for defendant and appellant.

MORGAN, Justice.

The defendant was charged and convicted of driving while under the influence of an alcoholic beverage (DWI) and manslaughter, second degree.

The undisputed facts show that on Sunday, June 22, 1975, the defendant's car while traveling south of Belle Fourche veered onto the right shoulder of the road and slowed down. Then suddenly the car went into a power slide and cut across all four lanes of the highway running into a 1973 Dodge Colt automobile. Both cars went into the ditch at the east side of the road and ended up approximately forty to fifty feet apart. The driver of the other vehicle died as a result of the injuries sustained in the collision.

At the time of the accident defendant admitted that he was intoxicated. However, he claimed that his wife was driving the car and he was napping in the front seat. He testified that after the accident happened, his wife was unconscious and he tried unsuccessfully to get the driver's door opened and to pull his wife from the car. Finally, noticing the decedent's car on fire, defendant and another bystander attempted to pull decedent from his car.

Defendant's story was disputed by other witnesses at the scene of the accident. Whereas none of the witnesses actually saw the defendant drive the car, they testified that they saw him behind the wheel and/or getting out of the driver's side of his car when they arrived on the scene.

There was testimony that the defendant's wife admitted on three different occasions that she was driving the car. However, she was allowed to leave the jurisdiction of the court and was not present to testify at the trial. Also, one witness alluded to the fact

that the mechanical difficulties were the reasons for the car veering across the highway in that, while observing the defendant's car immediately prior to the accident, he noticed the hood pop up and white smoke come from the engine.

The jury found the defendant guilty as charged of manslaughter. The trial judge thereupon directed the foreman to also sign a verdict guilty of DWI. We affirm.

■ The first issue of the many raised by the defendant that we choose to address is the invoking of the physician-patient privilege by a physician witness when asked by the defendant regarding the injuries for which he treated defendant's wife. The record is very cloudy as to the purpose of the question. We can only surmise that it was intended to support the defense claim that she was driving by showing injuries consistent with that. The state's attorney injected the question of physician-patient privilege and the trial court acquiesced, although he did state that he would permit the witness to testify as to what he saw, but not as to any communications from his patient nor any treatment afforded her. Thereupon the witness demonstrated his reluctance to testify without a release from Mrs. Luna. Part of these proceedings were held outside the presence of the jury and part were even off the record; so, while we might surmise the purport of the question, we have nothing before us by way of an offer of proof to show what the proposed testimony would develop. Without an offer of proof this court cannot find reversible error. In *State v. Murray,* 49 S.D. 429, 433, 207 N.W. 454, 455 (1926) this court held:

As the materiality of the evidence sought to be elicited is not apparent from the question itself, and there was no offer of proof, the exclusion of the evidence does not constitute reversible error.

■ The physician-patient privilege is a statutory privilege and by the terms of the statute SDCL 19–2–3 [1] extends only to civil cases, therefore, although the trial court was in error in his ruling, the defense counsel [2] did not preserve his records sufficiently to demonstrate that it was reversible error.

The next issue we address is the sufficiency of the evidence to sustain the verdict of second-degree manslaughter. The defendant moved for a new trial based on the insufficiency of the evidence. However, there is no mention in the record of any action taken by the court or for what reasons. We can only surmise that it was denied.

■ It is the general rule in this state that the trial court has a broad discretion in granting a new trial because of insufficiency of the evidence. *Allen v. McLain,* 74 S.D. 646, 58 N.W.2d 232 (1953). The trial court's discretion then will only be reviewed in case of manifest abuse. *Anderson v. Lale,* 88 S.D. 111, 216 N.W.2d 152 (1974).

■ Under SDCL 22–16–21 in order to sustain a guilty verdict of second-degree manslaughter there must be evidence to show that the defendant was under the influence of intoxicating liquor, was driving a motor vehicle and did so in a negligent manner. With the exception of defendant admitting that he was intoxicated at the time of the accident, the other two elements were proven solely by circumstantial evidence.

■ In our review of this issue we observe that the jury was properly instructed as to the consideration and inferences to be drawn from circumstantial evidence when the court instructed them that:

To warrant a conviction for crime on circumstantial evidence alone, the circumstances taken together should be of a

---

1. SDCL 19–2–3 provides:

A physician or surgeon, or other regular practitioner of the healing art, cannot, without the consent of his patient, be examined in a *civil action* as to any information acquired in attending the patient which was necessary to enable

him to prescribe or act for the patient; . . . (Emphasis added.)

2. We hasten to point out that counsel on appeal did not represent defendant in the trial court.

conclusive nature, and pointing to a moral certainty that the accused committed the offense charged. Such facts and circumstances must be shown as are consistent with each other, and consistent with the guilt of the party charged, and such as cannot by any reasonable theory be true and the party charged be innocent. So in this case if all the facts and circumstances shown can be reasonably accounted for upon any theory consistent with the innocence of the defendant, the jury should acquit the defendant.[3]

■ The jury, as the trier of fact, makes the decision regarding the consistency of the theories. The scope of review of this court has traditionally been to accept " 'that evidence, and the most favorable inferences that can be drawn therefrom, which will support the verdict'." [4] While this court has said in *State v. Best,* S.D., 232 N.W.2d 447, 457 (1975) that

"where circumstantial evidence alone is relied on as to any one or more of the essential elements the circumstance or circumstances must be entirely consistent with defendant's guilt and wholly inconsistent with any rational hypothesis of defendant's innocence and so convincing as to exclude a reasonable doubt that defendant was guilty of the offense charged,"

we are not thereby required to thrust aside the jury verdict as a decision on the fact arrived at under the proper instruction and jump in the jury box ourselves so to speak, but rather as the Supreme Court of North Dakota stated:

"[citations omitted], * * * rule as to circumstantial evidence, at the trial level, is that such evidence must be conclusive and must exclude every reasonable hypothesis of innocence, but at the appellate level we do not substitute our judgment for that of the jury or trial court where the evidence is conflicting, if one of the conflicting inferences reasonably tends to prove guilt and fairly warrants a convic-

tion. [citations omitted]." *State v. Allen,* 237 N.W.2d 154, 161 (N.D.1975).

Also in *State v. Eickmeier,* 187 Neb. 491, 191 N.W.2d 815 (1971) the court said that when the jury has considered the circumstantial evidence inconsistent with any reasonable hypothesis of innocence and returns the verdict of guilty, the verdict on appeal may not, as a matter of law, be set aside for insufficiency of the evidence if the evidence sustains some rational theory of guilt.

■ The two theories relied upon by the defendant were that the defendant was not driving the car, but if he was found driving the car, mechanical failure caused the car to swerve across four lanes of highway and not his own negligence. The defendant placed most of his emphasis on the first theory. Even though nobody actually saw the defendant driving, one witness saw him get out of the car on the driver's side and other witnesses saw him behind the steering wheel after the accident. This evidence, which must have been believed by the jury, is totally inconsistent with the defendant's explanation and therefore not consistent with the innocence of the defendant pertaining to his main defense.

The alternative theory, entirely inconsistent with the principal theory, was that mechanical failure not negligence or intoxication caused the collision. The state's only eyewitness who actually saw the collision described the actions of the defendant's car prior thereto. He stated that as he was approaching Hay Creek bridge from the south the defendant was approaching it from the north. He testified that he noticed "that the car seemed to be having trouble, * * * that there was white smoke coming from the brakes or the radiator, * * * like the engine or the radiator, but it could have been from the front tires possibly" and then "on the second look it appeared that either the hood popped up or something obstructed the car because it started to go off the road to the right or

---

3. Pattern Jury Instruction 1–16 and not objected to by defense counsel.

4. *State v. Zobel,* 81 S.D. 260, 263, 134 N.W.2d 101, 102 (1965); *State v. Geelan,* 80 S.D. 135, 120 N.W.2d 533 (1963).

west hand side." At that time the defendant's car was just leaving the bridge and the witness was directly parallel to him. He stated that the car started to slow down so that he did not pay any attention, but the next thing he caught out of the rear view mirror was the car going across all four lanes, straight across east and hitting the other car and going off the road. He described the movement of the car as seen in his rear view mirror as going across the road either speeding up or hitting his brakes and gas at the same time and cutting straight across all four lanes in what he termed a "power slide".

Defendant argues that this testimony gives rise to an inference that the collision was caused by mechanical failure of the vehicle and was inconsistent with the state's theory of negligence and intoxication. The only other evidence of mechanical failure which the defendant attempted to assert was his own testimony that perhaps something had gone wrong with the tires, however, the testimony was contradicted and the photographs of the defendant's car taken at the scene after the collision indicated all tires fully inflated. Had the collision occurred on the west side of the road we believe the testimony could arguably raise a theory consistent with the defendant's innocence and inconsistent with his guilt. However, there is nothing in the testimony regarding the fact that the vehicle either speeded up or went into a "power slide" and impacted with the decedent's vehicle at a point approximately 300 feet further south that is consistent with mechanical failure and inconsistent with the state's theory of negligence and intoxication. Had the defense seriously espoused this theory at the trial level they would surely have sought appointment of an expert to examine the vehicle and would have offered competent evidence of specific mechanical failure that would significantly explain the actions of the vehicle, rather than rely on the observations of a witness made in a span of some 40 seconds to a minute, part of which was based on what the witness himself denominated "debatable testimony" inasmuch as it was observation made in a rear view mirror.

Probably the most questionable issue raised by the defendant was the admission of the testimony of a bail bondsman on rebuttal. In his direct testimony the defendant had admitted a previous conviction of involuntary manslaughter while driving while intoxicated in Texas. As a part of the state's rebuttal the prosecutor called the defendant's bail bondsman who testified over proper objection that the defendant in filling out his bond application had admitted only a previous conviction for public intoxication. Appellant argues that the sole purpose of the testimony was to make him out a liar.

■ It is a rule of evidence that prior statements may be used to impeach the credibility of a criminal defendant.[5] There is however a certain qualification to this rule; that being, that the inconsistent statement cannot be of a collateral nature and not deal with irrelevant matters.[6]

■ In determining what is collateral Professor McCormick states the classical approach is to denote those facts which would have been independently provable regardless of the contradiction as collateral.[7] Two general kinds of facts meet this test. The first kind of facts are relevant to the substantive issues in the case.[8] Obviously the testimony does not meet this test. The second kind are facts which would be independently provable by extrinsic evidence apart from the contradiction to impeach or disqualify the witness. Among these are facts showing bias, interest, conviction of a crime, and want of capacity or opportunity for knowledge. Since the defendant had already testified as to his conviction of the crime of involuntary manslaughter while

5. *Grunewald v. U. S.,* 353 U.S. 391, 77 S.Ct. 963, 1 L.Ed.2d 931 (1957); see also *Schoenrock v. City of Sisseton,* 78 S.D. 419, 103 N.W.2d 649 (1960).

6. *State v. Davidson,* 9 S.D. 564, 70 N.W. 879 (1897); *State v. Thompson,* 71 S.D. 319, 24 N.W.2d 10 (1946).

7. McCormick, Evidence, § 47, p. 98.

8. *State v. Davidson,* supra.

driving while intoxicated, the statement made to the bail bondsman would not meet any of the latter tests. Had the testimony been the reverse, that is had he testified on direct that he had been convicted only of public intoxication and the bail bondsman testified that he had signed an application admitting the involuntary manslaughter conviction, the testimony would certainly have been admissible; but, that is not the case.

We must then consider whether the error in admitting the testimony was sufficiently prejudicial to require reversal and remand for a new trial. Since the defense—that the defendant was not driving—relied so heavily on the jury's acceptance of the defendant's testimony, the bail bondsman's testimony on its face, would be extremely prejudicial. However the testimony of several witnesses that the defendant opened the door and got out of the car on the driver's side in direct opposition to his testimony that he got out the passenger side and that the driver's door couldn't be opened militates so heavily against the defense that we are persuaded that the error was not sufficiently prejudicial to warrant reversal.[9]

With respect to the appellant's complaint that the trial court failed to comply with the jury request for depositions, it has long been held that this is solely within the discretion of the trial judge whether testimony of any witness or witnesses can be reread.[10] In civil matters, by statute,[11] depositions are specifically excepted from evidence which the jury may take to the jury room during deliberation. Reading this statute, coupled with SDCL 23–41–21 and SDCL 23–1–3, it would appear that the same rule applies for criminal cases.

Appellant failed to object and except to the court's instructions which directed the jury to find the defendant guilty of driving while intoxicated, a lesser included offense, if they found him guilty of the offense of manslaughter as charged. After the jury returned the verdict of guilty of the major offense the court immediately directed the foreman to sign the verdict of guilty of the lesser offense. This too, without any objection on the part of the counsel for the defendant. It is simply basic black letter law the court cannot direct a verdict of guilty in a criminal case. SDCL 23–45–17 very clearly sets out the only recourse that the court had upon return of the verdict of guilty of the major offense. However, since the appellant's counsel failed to either object and except to the instructions, or to the trial court's direction to the jury foreman, this issue is not properly before this court.[12]

A number of the other issues raised involved prosecutorial misconduct. The record is replete with examples of misconduct and material outside the evidence, such as statements by the prosecutor:

> We are not harassing this defendant. In our opinion, we think that man is guilty. Ladies and Gentlemen, I submit to you that the defendant lied all afternoon long. He lied to a Deadwood police officer, he lied to his bondsman, and he lied to us.
>
> That man right there, at that time and place, for years before that, had completely dominated Virginia Luna. He had been convicted of killing a person in Texas. He knew that if he was convicted of killing a person in South Dakota it meant the slammer. His wife knew that.

9. *State v. Alfson*, 50 S.D. 533, 210 N.W. 721 (1926); *Matter of D. T.*, S.D., 237 N.W.2d 166 (1975).

10. *U. S. v. Mesteth*, 528 F.2d 333 (8th Cir. 1976); *People v. Howe*, 392 Mich. 670, 221 N.W.2d 350 (1974); *State v. Lord*, 42 N.M. 638, 84 P.2d 80 (1938).

11. SDCL 15–14–20 provides:
   Upon retiring for deliberation the jury may take with them all papers which have been received as evidence in the cause, except depo-

sitions and such papers and exhibits as ought not, in the opinion of the court, to be taken from the person having them in his possession; and they may also take with them notes of the testimony or other proceedings on the trial taken by themselves, or any of them, but none taken by any other person.

12. *Application of Heintz*, 78 S.D. 188, 99 N.W.2d 794 (1959); *Lang v. Burns*, 77 S.D. 626, 97 N.W.2d 863 (1959).

They had three children. He does not support them, but they have three children.

Now, she did not have a driver's license. And I submit to you, Ladies and Gentlemen, she did not even know how to drive.

It's a simple thing. Simple little lies. That man can't tell the truth about small items.

All the above statements constitute reprehensible conduct, surely inflammatory, on the part of the prosecutor. However, most of these are not properly before us inasmuch as defense counsel woefully failed to protect his record by making proper objection, and when he did object he failed to move for mistrial. This court has consistently rejected the plain error rule so we will not reverse on that grounds.[13] However, the misconduct was so glaring and the defense so ineffective in this respect as well as with respect to the other issues noted above, that the defendant may well have grounds to attack the conviction collaterally by post-conviction proceedings on the grounds of deprivation of his constitutional rights to a fair trial.

All the Justices concur.

---

13. *Arbach v. Gruba,* S.D., 232 N.W.2d 842 (1975); *State v. Kindvall,* 86 S.D. 91, 191 N.W.2d 289 (1971).