STATE of South Dakota, Plaintiff
and Appellee,

v.

Bennie BREED, Defendant
and Appellant.

Nos. 15198, 15199.

Supreme Court of South Dakota.

Considered on Briefs Oct. 22, 1986.

Decided Jan. 7, 1987.

Grant E. Gormley, Chief Deputy Atty. Gen., Barry Vlasman, Legal Intern, Mark V. Meierhenry, Atty. Gen., on brief, Pierre, for plaintiff and appellee.

Jon W. Dill of Wheeler Law Office, Huron, for defendant and appellant.

MILLER, Circuit Judge.

Appellant was convicted of two counts of first-degree burglary (SDCL 22–32–1) and one count of petty theft in the second degree—an allegation of receiving stolen property of a value less than $100. (SDCL 22–30A–7).[1] He was sentenced to two consecutive twenty-five year prison terms on the burglary convictions and a concurrent thirty day county jail sentence on the petty theft conviction. We reverse and remand for a new trial.

Appellant, who appeared pro se at trial, raises several issues on appeal. A plain error issue requires reversal and is dispositive; however, we will address certain other issues raised as guidance at retrial.

## CIRCUMSTANTIAL EVIDENCE INSTRUCTION

The evidence against appellant on the burglary charges was totally circumstantial. Both victims personally observed a prowler in their homes in the early morning hours of August 3, 1985. Both described the prowler as a slim male of medium height wearing a black sleeveless shirt and jeans. One of the victims further observed that the prowler was black and was wearing a "burgundy or reddish colored stocking cap or hat or something on his head." Neither was able to make either an out-of-court or in-court identification of appellant.

Several police officers testified that they were on surveillance in that neighborhood on the night in question, in uniform but in unmarked vehicles. These officers observed and identified appellant in the neighborhood at various times behaving strangely under suspicious circumstances. They

testified generally that he wore a dark colored, sleeveless shirt, jeans, and a reddish maroon hairnet. Other than the hairnet, this is generally the apparel appellant wore at the time of his arrest.

By its Instruction 25, the trial court advised the jury on the effect and weight of circumstantial evidence, as follows:

The word 'evidence,' as used in these instructions, means the testimony of witnesses, a writing, a material object, or other things presented to the senses that are offered to prove the existence or nonexistence of a fact.

Evidence is either direct or circumstantial.

Direct evidence means exactly what that term says—that is, it is evidence that directly proves a fact, without having to infer that fact from some other fact, and is evidence which itself, if true, conclusively establishes that fact.

Circumstantial evidence, on the other hand, means evidence that proves a fact from which you logically and reasonably infer the existence of another fact.

It is not necessary that facts be proved by direct evidence. They may be proved also by circumstantial evidence or by a combination of direct and circumstantial evidence. The law makes no distinction between direct evidence and circumstantial evidence as a means of proof. Neither is entitled to any greater weight than the other.[2]

The trial court did not instruct the jury that where the case of the state rests substantially or entirely on circumstantial evidence, they are not permitted to convict

---

1. An habitual offender information charging 1975 theft and burglary of habitation felonies in Texas was dismissed on motion of the state.

2. The court, through its Instruction 15, explained at length to the jury the various factors it must find beyond a reasonable doubt as to the accuracy of the identity of the defendant before a conviction could follow. The court advised the jury that the factors they could take into consideration were: the prior opportunity of the witnesses to observe the alleged criminal act; the existence of any discrepancy between

any prior description and the defendant's actual description; any prior identification of another person; failure of the witness to identify the defendant on a prior occasion; and lapse of time between the alleged act and the identification. The court went on to advise the jury that that list was not exhaustive but included only some of the factors to be considered. Although Instruction 15 was and is appropriate under the circumstances here, it does not specifically resolve the deficiencies in the circumstantial evidence instruction.

the accused unless (1) the proved circumstances are not only consistent with the guilt of the accused, but cannot be reconciled with any other rational conclusion and (2) each fact which is essential to complete a set of circumstances necessary to establish the accused's guilt has been proved beyond a reasonable doubt. *State v. Luna,* 264 N.W.2d 485 (S.D.1978); *State v. Schafer,* 297 N.W.2d 473 (S.D.1980); *State v. Hall,* 353 N.W.2d 37 (S.D.1984); *State v. Weisenstein,* 367 N.W.2d 201 (S.D. 1985).

■ The trial court's failure to so instruct the jury in our opinion clearly and substantially prejudiced appellant. Even though this issue was not raised on appeal, we conclude that this plain error requires a retrial. SDCL 23A–44–15; *State v. Brammer,* 304 N.W.2d 111 (S.D.1981).

In guidance for the trial courts of this state, we feel compelled to comment on the criminal pattern jury instructions dealing with circumstantial evidence.

Prior to its revision in 1985–86, the pattern jury instruction dealing with direct and circumstantial evidence included the following paragraph:

> To warrant a conviction for crime on circumstantial evidence alone, the circumstances taken together should be of a conclusive nature, *and pointing to a moral certainty* that the accused committed the offense charged. Such facts and circumstances must be shown as are consistent with each other, and consistent with the guilt of the party charged, and such as cannot by any reasonable theory be true and the party charged be innocent. So in this case if all the facts and circumstances shown can be reasonably accounted for upon any theory consistent with the innocence of the defendant, the jury should acquit the defendant. (Emphasis supplied) South Dakota Criminal Pattern Jury Instruction 1–16.

The foregoing language had previously been specifically cited with approval by this court in *Luna, supra.*

The current pattern jury instruction, as the result of the 1985–86 revision, reads in its entirety as follows:

> Direct evidence means evidence that directly proves a fact, without an inference, and which in itself, if true establishes that fact.

> Circumstantial evidence means evidence that proves a fact from which an inference of the existence of another fact may be drawn.

> It is not necessary that facts be proven by direct evidence. They may be proved also by circumstantial evidence or by a combination of direct and circumstantial evidence. The law makes no distinction between direct evidence and circumstantial evidence as a means of proof. Neither is entitled to any greater weight than the other.

> Where the case of the state rests substantially or entirely on circumstantial evidence, you are not permitted to find the defendant guilty of the crime charged against him unless the proved circumstances are not only consistent with the guilt of the defendant, but cannot be reconciled with any other rational conclusion and each fact which is essential to complete a set of circumstances necessary to establish the defendant's guilt has been proved beyond a reasonable doubt.

> If all the facts and circumstances shown can be reasonably accounted for upon any theory consistent with the innocence of the defendant, the jury must acquit the defendant. South Dakota Pattern Jury Instruction 1–14–1.

■ In *State v. Brewer,* 86 S.D. 434, 197 N.W.2d 409 (S.D.1972), we held that the pattern jury instruction dealing with the definition of "beyond a reasonable doubt" need not require that the jury be convinced of defendant's guilt "beyond a moral certainty." We are equally persuaded at this time that the jury need not be instructed that to warrant a conviction on circumstantial evidence the circumstances must point to a "moral certainty" that the accused committed the crime.

As we pointed out in *Brewer*, pattern jury instructions "... are the product of the labor of many judges and lawyers fashioning suggested instructions in accord with decisions of this and other states. They serve a useful purpose for bench and bar, and are changed when later decisions of the courts require such action as has occurred on occasion." 86 S.D. at 438, 197 N.W.2d at 411.

■ We approve Pattern Instruction 1–14–1 in the 1985–86 revision, as cited above for use by the trial courts of our state.

## ASSISTANCE OF COUNSEL/PRO SE REPRESENTATION

Although we would hope that this issue does not continue at the retrial, we feel it necessary to address the same in the event appellant persists in his prior posture.

At the time of appellant's initial appearance on the criminal charges, counsel was appointed to represent him. For reasons which are not clear in the record, appellant asked that this attorney be discharged and that he be replaced. This request was granted and a second attorney was appointed.

The second attorney generally undertook a vigorous defense of the case in that he appeared at various judicial proceedings and filed numerous motions. This attorney was, however, allowed to withdraw because of various accusations made by appellant to state agencies and further on the grounds that appellant was difficult and uncooperative to represent. The court appointed a third attorney whom appellant refused to even meet or consult with.

The trial court appropriately took the lead in addressing this problem and initiated hearings regarding counsel for appellant. Appellant advised the court of various potential retained attorneys, however, none appeared and all seemed uninterested in representing him.

At a lengthy hearing, approximately ten days before trial, appellant refused further court appointed attorneys, stating "... I'm not going to get any representation from a court-appointed attorney from this court. All I need—like I said—is (someone) to type up my motions." The trial court persistently cautioned appellant of the pitfalls of pro se representation and the need for professional counsel. Appellant's attitude is best characterized by his statement that he would do it himself "... rather than have a crooked court-appointed lawyer who cares nothing about my rights or whatever."

■ However unwise the decision may have been, it does appear that waiver of the right to counsel was voluntarily, intelligently, and knowingly made. *Jones v. State*, 353 N.W.2d 781 (S.D.1984); *Brady v. United States*, 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970); *Johnson v. Zerbst*, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938); *Wabasha v. State*, 292 N.W.2d 340 (S.D.1980). Further, it would seem that in many respects appellant did a passable job of cross-examining witnesses and objecting to questions and comments of the prosecutor.

## SEVERANCE OF COUNTS

Appellant argues that it was prejudicial error to be required to go to trial on all charges because the misdemeanor charges were based on direct evidence[3] and the felony charges were substantially based on circumstantial evidence.

■ We do not reach the issue of whether, under the procedural history and facts presented, the trial court abused its discretion in denying severance of the charges. *State v. Closs*, 366 N.W.2d 138 (S.D.1985). We do, however, strongly suggest that at retrial the felony charges be tried separate from the misdemeanor charges.

---

**3.** At the time of his arrest and the search of his home, it was discovered that appellant had in his possession certain property alleged to have been stolen. This property, namely a clock, a toaster, and a T.V. set, worth an aggregate value of less than $100, was identified by the owners at trial.

## VALIDITY OF SEARCH AND SEIZURE

■ During the time a search warrant was being prepared, the police obtained the consent of appellant's wife to search the premises. Within minutes other officers appeared with the search warrant authorizing a search of the premises for certain clothing. During this search the officers observed and seized the T.V., clock, and toaster which were in plain sight. We conclude that the search and seizure were not improper, unreasonable or illegal. The property seized need not have been suppressed. *State v. Goodman,* 384 N.W.2d 677 (S.D.1986); *State v. Cundy,* 86 S.D. 766, 201 N.W.2d 236 (S.D.1972), *cert. denied* 412 U.S. 928, 93 S.Ct. 2751, 37 L.Ed.2d 155 (1973); *Marshall v. United States,* 422 F.2d 185 (5th Cir.1970); *Harris v. United States,* 390 U.S. 234, 88 S.Ct. 992, 19 L.Ed.2d 1067 (1968).

Reversed and remanded for new trial.

WUEST, C.J., MORGAN and SABERS, JJ., concur.

HENDERSON, J., concurs specially.

MILLER, Circuit Judge, for FOSHEIM, Retired Justice, disqualified. (Prior to his appointment as a Supreme Court Justice, Robert A. Miller was appointed in his capacity as a circuit court judge to serve in the place of Retired Justice Fosheim in this matter, and the record will reflect that he participated as a circuit court judge.)

HENDERSON, Justice (specially concurring).

I would reverse the trial court also, but not just on the grounds expressed in the majority opinion. Additionally, a reversal, in my opinion, lie based on consolidation of the two different charges at trial, plus the unlawful seizure of the television, clock, and electric toaster.

Breed was convicted of two counts of first-degree burglary and one count of second-degree petty theft (receiving stolen property valued at less than $100). SDCL 22–32–1 and SDCL 22–30A–7. *See* SDCL 22–30A–17. Our Legislature has directed that two or more offenses (whether felony or misdemeanors) may be charged in the same information or indictment only if the offenses "are of the same or similar character or are based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan." SDCL 23A–6–23. *See State v. Closs,* 366 N.W.2d 138, 139 (S.D.1985).[1] Additionally, "[i]f it appears that a defendant ... is prejudiced by a joinder of offenses ... the court may order an election or separate trials of counts ... or provide whatever other relief justice requires." SDCL 23A–11–2. *See Closs,* 366 N.W.2d at 139; *State v. Hanson,* 278 N.W.2d 198, 201 (S.D.1979); *State v. Van Beek,* 88 S.D. 154, 157, 216 N.W.2d 561, 563 (1974).

Burglary and receiving stolen property are separate and distinct acts. Even if the acts of burglary and receiving stolen property did root from a "common scheme or plan" (and this is highly questionable), severance is still mandated based on the obvious prejudice that would befall Breed if the felony burglaries and the misdemeanor receipt of stolen property were treated at one trial. The evidence supporting Breed's burglary charges was totally circumstantial while the receipt of stolen property charge rests upon fruits of a dubious consensual search of Breed's apartment.

1. According to the American Bar Association Standards for Criminal Justice, "[i]f the offenses are not related, the defendant is entitled to a severance *as of right ....*" Standards 13–3.1(b), commentary at 13.31; 13–1.3, commentary at 13.11 (2d ed. 1980) (emphasis added).

  Unrelated offenses include any offenses that are not based upon the same conduct, upon a single criminal episode, or upon a common plan. Offenses committed at different times and places are not "related" merely because they are of the same or similar character. Thus, a series of burglaries or holdups would be unrelated offenses even though a distinctive mode of commission is repeatedly used. Standard 13–1.3, commentary at 13.11. So in Breed's case, the burglaries and the receipt of stolen property charges would likely be unrelated offenses that should have been severed "as of right." *See* Standards 13–1.3 and 13–3.3.

Testimony of police officers who conducted the search undoubtedly affected Breed's receipt of stolen property charge and his burglary charges. This accumulation of evidence unfairly prejudiced Breed and these counts should have been treated in separate trials. *See Closs*, 366 N.W.2d at 139; *State v. Maves*, 358 N.W.2d 805, 812 (S.D.1984) (Henderson, J., dissenting); *Hanson*, 278 N.W.2d at 201; *Van Beek*, 88 S.D. at 157, 216 N.W.2d at 563; SDCL 23A–11–2.[2] An error was made when the trial court chose to treat these two counts in one proceeding. This error amounted to an abuse of discretion which requires reversal. *See Closs*, 366 N.W.2d at 140; *Van Beek*, 88 S.D. at 157, 216 N.W.2d at 563.

I would also vote to reverse based upon an improper search and resulting seizure of the television, clock, and electric toaster. The owner of the clock and electric toaster testified that she "never reported" them as being stolen. It was therefore impossible for police officers conducting the search to believe that said clock and toaster were stolen; there was no basis for this assumption. The "plain view" rule proffered by State and relied upon in the majority opinion is simply inapplicable in this case.

It is also noted that the search warrant recited "clothing," namely, a T-shirt, a pair of maroon jogging shorts, a pair of blue jeans, and a pair of jogging shoes. These officers indicated that they were searching for clothing, while a search warrant was being prepared and gave no indication that they were searching for anything other than clothing. These officers were conducting a search which related to facts in the early morning hours of August 3, 1985, not of facts relating to an unreported petty theft (clock and toaster), which occurred three weeks earlier, nor of facts relating to a July 4, 1985 theft of a television set. Under the amorphous ruling of the majority, these officers could apparently, without

warrant, search his apartment for anything and take anything which suited their fancy. For instance, had they seen a set of golf clubs or a baseball glove or a set of binoculars, they could have seized those items under the rationale of the majority. It would be indispensable for the officers to know in the first instance, before they seized anything, that there were stolen items in the apartment. They cannot grab, at their whim, items of personal property which strike their fancy as something that might have been stolen from someone at sometime at someplace. Nay, the supreme law of the land is the United States Constitution and in the Fourth Amendment thereof, it plainly states:

> The right of the people to be secure in their persons, *houses, papers and effects, against unreasonable searches and seizures, shall not be violated;* and no warrants shall issue but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized. (Emphasis added.)

This article is one of the first ten articles to the Constitution of the United States commonly referred to as the Bill of Rights. It arose as the result of British soldiers beating upon and knocking down the doors on houses of our early American ancestors and then searching and seizing the personal effects of those besieged people. Thanks to the Revolutionaries—we are ostensibly secure in our homes today—if we will but rekindle the quest for freedom.

Therefore, I specially join the majority opinion and would include the above additional grounds for reversal.

---

**2.** It may be generally stated that offenses should be severed when there is a significant risk "that the jury will convict the defendant upon the weight of the accusations or upon the accumulated effect of the evidence. The defendant can also be disadvantaged if the available defenses are inconsistent or if the defendant wants to testify as to one offense but not as to others." American Bar Association Standards, *id.,* Standard 13–2.1, commentary at 13.13 (footnotes omitted).