**Robert ROSS, Petitioner,**

v.

**Donald WYRICK, Warden, Missouri State Penitentiary, Respondent.**

**No. 76–246C(2).**

United States District Court,
E. D. Missouri, E. D.

Feb. 28, 1978.

Thomas Scott Richardson, Jr., Richardson & Carnasiotis, St. Louis, Mo., appointed attorney for petitioner.

John D. Ashcroft, Atty. Gen. for State of Missouri, Neil MacFarlane, Asst. Atty. Gen., Jefferson City, Mo., for respondent.

## MEMORANDUM

WANGELIN, District Judge.

Petitioner seeks federal habeas corpus relief pursuant to 28 U.S.C. § 2254. He is presently in the custody of the Missouri Department of Corrections as the result of two convictions and sentences in the Circuit Court of Mississippi County, Missouri. In 1974, a jury found petitioner guilty of assault with intent to kill and robbery in the first degree. The court sentenced petitioner to twenty five and thirty years, respec-

tively. The sentences were imposed consecutively.

The judgment of conviction was appealed and affirmed by the Missouri Court of Appeals, Springfield district, 530 S.W.2d 457 (1975). A motion for rehearing or transfer to the Missouri Supreme Court and application for transfer were denied.

In his federal habeas corpus application petitioner complains of the jury selection method used in Mississippi County. He alleges violations of his guarantees under the Fifth and Fourteenth Amendments of the Constitution of the United States, in that the jury selection procedure invidiously discriminated against Negro membership. No challenge has been made by the respondent that petitioner has not exhausted his available state remedies.

This Court previously considered this case. In an earlier opinion, it was noted that petitioner's challenge to the jury selection procedure created concern, but could not be upheld because no facts were put before this Court in order to allow it to properly analyze the issue. The petitioner appealed the decision to the United States Court of Appeals for the Eighth Circuit on August 30, 1976. The Court of Appeals remanded the case with instructions to hold an evidentiary hearing relating to the racial composition of the jury list, the panel and the jury which heard petitioner's case. *Ross v. Wyrick*, 553 F.2d 51 (8th Cir. 1977). As suggested, petitioner's appellant counsel continued in his role.

A hearing was held at Cape Girardeau, Missouri, on July 18, 1977 before the Honorable William S. Bahn, United States Magistrate. The testimony revealed that on the morning of petitioner's trial, twenty three regular jurors were present for examination. None of them were black. After two of the veniremen had been stricken for cause, the court ordered the sheriff to obtain six new jurors. The sheriff, in accordance with § 494.060, RSMo 1969, brought in six additional jurors, four of which were black. Two blacks eventually served on the petit jury of twelve persons.

The record revealed that the master jury list from which the jurors serving at petitioner's trial were selected was prepared on April 27, 1966. The County Clerk read the names on the voter registration list aloud and the five jury commissioners selected persons they desired to include in the jury lists. The names selected were placed on cards. The cards were drawn at random from a wheel to choose a particular venire.

The parties agreed that the population of Mississippi County was sixteen thousand, six hundred and forty-seven. The black population was three thousand, five hundred and twenty three, about 21.16% of the total. This agreement was based upon the 1970 census and did not consider the provisions of § 494.010, RSMo 1969, concerning the age of jurors.

Section 494.010, RSMo 1969 requires that a person be over twenty one years of age to serve on a petit jury. Section 494.030, RSMo 1969 allows persons over the age of sixty five to be excused from jury service. Because of these two statutes the Mississippi County jury commissioners only selected persons in the twenty one to sixty five * age group to make up the master jury list.

The 1970 Census shows that there were 7470 eligible jurors in Mississippi County. There were 1083 eligible blacks, representing 14.5% of the total. Nine hundred and sixty four persons were chosen from the voter registration list to comprise the master list or panel. Thirty three of those persons were black, or 3.42% of the total. Thus there was a disparity of approximately 11.08% between the number of blacks eligible for jury service and the number on the master list.

 A conviction must be set aside if it is based on an indictment of a grand jury or the verdict of a petit jury from which Negroes are excluded because of their race. *Whitus v. Georgia*, 385 U.S. 545, 87 S.Ct. 643, 17 L.Ed.2d 599 (1967); *Strauder v. West Virginia*, 100 U.S. 303, 25 L.Ed. 664 (1880). The exclusion must be systematic

and extend over a significant period of time. In evaluating the relevant percentages there is no easy formula for finding prohibited discrimination. Subtle, sometimes elusive factors must be weighed.

Prior cases have considered minority representation on a percentage basis, finding discrepancies of 14.4% to 39% sufficient to reverse a conviction. *Castaneda v. Partida*, 430 U.S. 482, 97 S.Ct. 1272, 51 L.Ed.2d 498 (1977) (39%); *Turner v. Fouche*, 396 U.S. 346, 90 S.Ct. 532, 24 L.Ed.2d 567 (1970) (23%); *Whitus v. Georgia, supra* (18%); *Jones v. Georgia*, 389 U.S. 24, 88 S.Ct. 4, 19 L.Ed.2d 25 (1967) (14.4%). As stated before, the discrepancy here was about 11%. The master jury list in question was composed in 1966 and presumably was used continually until 1975. These figures *suggest* deliberate exclusion but are not alone conclusive.

Mississippi County concededly used the "key man" system of jury selection in accordance with Chapter 494, RSMo 1969. The jury commissioners selected people known to them in their respective townships. The commission was composed of the County Clerk, three members of the county court, the Circuit Judge, and the Clerk of the Circuit Court. These persons, living in a rural county, had at least a general knowledge of the citizenry. Their testimony was that they discussed only the qualifications set out in § 494.020, RSMo 1969 when picking the master jury list. They did not discuss race.

Petitioner contends that the potential jurors were identified to the jury commissioners by race because a "C" was placed after the names of blacks on the voter registration list. Exhibit 3, a copy of that list, has such indicators on it. There is a question, however, as to when the "C's" were placed on the list.

The County Clerk, Mr. Howlett, testified that he did not know about the "C's" until recently "when you folks were down there and I looked." The Missouri Court of Appeals stated in *State v. Ross, supra* at 459, that "the names so selected did not indicate

---

* Not all persons over the age of 65 were excluded. However, an effort was made to keep them

off the list because they frequently asked to be excused causing expense to the County.

race." It would appear that the "C's" got on the registration list marked Exhibit 3 long after Ross was tried.

It would be difficult to consider the above facts and conclude that Ross has made a prima facie showing of systematic exclusion of blacks from juries in Mississippi County. While there may be underrepresentation of blacks in the master jury list, there is no credible evidence of deliberate exclusion. The evidence was to the contrary that when a black was drawn he was left on the venire. In any event, respondent argues that the courts must look to the jury panel and not the master jury list. Two of the twelve jurors who convicted Ross were black (16.6%). Four of the twenty-nine who comprised the venire were black (13.7%). These numbers are not at all disproportionate when compared to the number of blacks eligible for jury service.

■ Although critical inquiry goes to underrepresentation or exclusion in deciding the questions presented by this case, the ultimate question is whether petitioner was accorded his constitutional right to trial by an impartial jury. It may be necessary to concentrate on the selection process when one is tried before an all white jury. That is not the case here. The Court has carefully reviewed the transcript of petitioner's trial. If error did exist in the master jury list, that error was corrected when the jury panel was selected. Ross received a fair trial before an impartial jury.

The application for habeas corpus relief will be denied.