STATE of South Dakota, Plaintiff and Respondent,

v.

Daniel HALL, Defendant and Appellant.

No. 12088.

Supreme Court of South Dakota.

Dec. 7, 1978.

Judith A. Atkinson, Asst. Atty. Gen., Pierre, for plaintiff and respondent; William J. Janklow, Atty. Gen., Pierre, on brief.

Thomas M. Maher of Duncan, Olinger, Srstka, Maher & Lovald, Pierre, for defendant and appellant.

ZASTROW, Justice.

Defendant was involved in a short-lived fight at the Hop Scotch Bar in Fort Pierre. After the incident, the defendant's victim swore out a complaint charging defendant with assault and battery, a misdemeanor. A few weeks later, at the victim's request, the Stanley County State's Attorney dismissed the misdemeanor charge and a preliminary information charging a felony of assault with intent to inflict great bodily injury was substituted. Following a preliminary hearing, defendant was bound over and stood trial before a Stanley County jury. The jury returned a verdict of guilty on the lesser included offense of assault and battery. Defendant appeals from the jury verdict and judgment of conviction.

The defendant raises three issues in his appeal:

(1)  Was he denied his right to a jury drawn from a fair cross-section of the community?

(2)  Were the trial court's post-submission communications to the jury coercive?

(3)  Has the defendant been subjected to double jeopardy?

### JURY PANEL COMPOSITION

The initial jury panel consisted of fifty citizens, with nearly an equal number of male and female members.  Prior to the trial, twenty-six members of the panel were excused by the presiding judge.  At the commencement of defendant's trial, the panel consisted of seven men and nineteen women.  The jury selected to hear the case consisted of three men and nine women, according to the defendant's brief.

The state argues that the defendant must prove an intentional and purposeful discrimination against an identifiable community group in order to succeed in his challenge of the jury array.  In support of its position, the state relies upon this court's decision in *State v. Plenty Horse,* 1971, 85 S.D. 401, 184 N.W.2d 654.  *Plenty Horse* was based upon the Fourteenth Amendment and applied the standard first enunciated in *Strauder v. West Virginia,* 1880, 100 U.S. 303, 25 L.Ed. 664, that a criminal defendant is denied equal protection of the law if, as a result of purposeful discrimination, members of his race are excluded from jury duty.

However, since *Plenty Horse,* the United States Supreme Court has decided *Peters v. Kiff,* 1972, 407 U.S. 493, 92 S.Ct. 2163, 33 L.Ed.2d 83, and *Taylor v. Louisiana,* 1975, 419 U.S. 522, 95 S.Ct. 692, 42 L.Ed.2d 690.  These cases hold that the Sixth Amendment, as applied to the states by the Fourteenth Amendment, requires that all state petit juries must be selected at random from a fair cross-section of the community.  The South Dakota legislature had adopted a statute which provides a similar requirement:

"It is the policy of the state of South Dakota that all litigants in the courts of this state entitled to trial by jury shall have the right to grand and petit juries selected at random from a fair cross-section of the community in the municipality, district or county where the court convenes. * * * "  SDCL 16–13–10.1.

It is apparent that the burden is now upon the judiciary, not only to prevent purposeful discrimination against minorities but to insure that all identifiable groups in the community are fairly represented on jury panels.  In *Taylor,* the fair cross-section requirement was held violated where women, who composed fifty-three percent of the community, made up only ten percent of the jury wheel and were not represented on the jury venire.

It is not important whether the underrepresentation is purposeful or not, nor whether it arose from the selection of the jury panel or after through the granting of statutory exemptions or excuses.  In *United States v. Armsbury,* 1976, D.C.Or., 408 F.Supp. 1130, a case cited by the state, the federal district judge stated:

"Even if these excuses (for extreme inconvenience and undue hardship) do result in the underrepresentation of certain cognizable groups, the statutory authority to grant them is not unconstitutional.  Whether exemptions based on excuse are constitutional or not will depend on each excuse.  If the excuse reflects a rational accommodation between the community's need for jurors and its need for uninterrupted professional or other important services, then it is constitutional.

\*      \*      \*      \*      \*      \*

"(However), if a substantial threat is posed to the representative nature of the jury pool because of constitutionally granted excuses, *then supplemental names must be added to correct any gross imbalance.*"  408 F.Supp. at 1135. (emphasis added)

Although the United States Supreme Court has not indicated what percentage of underrepresentation on a single panel would constitute a violation of the fair cross-section requirement, it appears

that an absolute percentage difference of fifteen percent or more would require supplementation of the jury panel. See *United States v. Test,* 1976, 10 Cir., 550 F.2d 577; *Foster v. Sparks,* 1975, 5 Cir., 506 F.2d 805.[1]

The defendant concludes that a jury panel of seven men and nineteen women (a 27% composition of males) violates the fair cross-section requirement. To do so, he assumes, without proof, that men comprise fifty percent of the population of Stanley County. The underrepresentation would be an absolute percentage difference of twenty-three percent (i. e., 50%–27% = 23%). If those were the final figures, we assume that the panel would not contain a fair representation of men and would require supplementation.

■ However, after the defendant made his objection to the jury panel composition, a second panel was called. When or for what purpose it was called does not appear in the settled record. The composition of the second panel does not appear in the settled record, nor was any further challenge of the jury panels made after it was called. The record was settled without a transcript of the voir dire proceedings or the clerk's juror records. As has been stated before, the settled record is the sole evidence of the trial court's proceedings, *Boettcher v. Thompson,* 21 S.D. 169, 110 N.W. 108, and it is the obligation of the parties to see that the settled record contains all matters necessary for the disposition of the issues raised on appeal. *Belcher v. Spillman,* 1975, 28 Ill.App.3d 973, 329 N.E.2d 550.

■ The defendant's failure to include in the settled record the entire voir dire proceedings leaves this court in a position of speculating as to the composition of the two combined jury panels. The defendant

would have us presume that because the petit jury selected to try this case was composed of three men and nine women, the second jury panel suffered from the same underrepresentation of men. It was stated in *Taylor,* supra:

"It should also be emphasized that in holding that petit juries must be drawn from a source fairly representative of the community *we impose no requirement that petit juries actually chosen must mirror the community and reflect the various distinctive groups in the population.*" 419 U.S. at 538, 95 S.Ct. at 702, 42 L.Ed.2d at 702–703.

We therefore refuse to presume, because the petit jury members were disproportionately women, that the source was not a fair cross-section of the community. *State v. Tucker,* 1978, 118 Ariz. 76, 574 P.2d 1295. If we draw any presumption from an incomplete settled record, the presumption is that the trial court acted properly. *Schurman v. Schurman,* 60 S.D. 489, 245 N.W. 39; *LaPlaca v. Gilbert and Wolf, Inc.,* 1976, 37 Ill.App.3d 259, 345 N.E.2d 774. In the absence of any evidence in the settled record to the contrary, we presume that the trial court acted correctly and that the second panel was called to correct the underrepresentation of males on the jury panel.

## COMMUNICATIONS WITH JURY

The trial in this case began with the selection of the jury on July 19, 1976. After hearing one witness, the court took an early recess for the day; court did not resume until 9:30 a. m., the following day to allow the jurors sufficient travel time. The matter was submitted to the jury at 6 p. m., on July 20, 1976, following the giving of the court's instructions and closing arguments.

---

1. This percentage is taken from *Swain v. Alabama,* 1965, 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759, and *Jones v. Georgia,* 1967, 389 U.S. 24, 88 S.Ct. 4, 19 L.Ed.2d 25, although both are discrimination cases, these percentages have been used to determine what is or is not a substantial underrepresentation on a single jury panel. See, e. g., *Ross v. Wyrick,* 1978, D.C.Mo., 446 F.Supp. 178. Although smaller percentages over a long period of time may support a challenge that the selection process does not provide a fair cross-section, no single panel difference of less than the 14.7% in *Jones v. Georgia,* supra, has been found supporting such challenges. Trial judges may avoid these challenges by supplementing any jury panel where an identifiable group is underrepresented by fifteen percent or more.

After taking a break for dinner, the jury resumed its deliberations. At 10:30 p. m., the trial judge sent the following communication to the jury:

"Please advise whether you believe that you will be able to arrive at a verdict in this case, or whether you believe that you are hopelessly deadlocked. Do not reveal how you stand numerically or otherwise in responding to this communication."

and received the reply from the jury foreman:

"We have taken considerable time reviewing your instructions and have taken two votes but have not reached a decision. We do not feel we are hopelessly deadlocked."

Just before midnight, the trial judge again sent the same message to the jury and received the reply: "We are making progress and have taken four votes." At that time, the trial judge advised counsel that if a verdict was not reached by 1 a. m., he would declare a mistrial. At 12:51 a. m., the jury returned a verdict of guilty on the lesser charge of assault and battery. Defendant asserts that the trial judge's messages to the jury coerced and pressured the verdict.

■ This court has previously held that the *"Allen* charge"[2] or "get-together instruction" is not to be used in criminal trials in this state's courts. *State v. Ferguson,* 1970, 84 S.D. 605, 175 N.W.2d 57. Defendant admits that the communications with the jury were not in the form of an *"Allen* charge" or "get-together instruction," but asserts that the message contained an innuendo that the verdict should be reached as soon as possible.

The ABA Standards for Criminal Justice, The Function of the Trial Judge, § 5.2(b) express the prevalent rule that

"[t]he trial judge should require a record to be kept of all communications received by him from a juror or the jury after the jury has been sworn, and he should not communicate with a juror or the jury on any aspect of the case itself (as distinguished from matters relating to physical comforts and the like), except after notice to all parties and reasonable opportunity for them to be present."

See also 75 Am.Jur.2d, Trial, § 1001. Defendant here makes no complaint that the trial judge's communications to the jury were without notice to him or in his absence.

The ABA Standards for Criminal Justice, Trial by Jury, § 5.4(b), (c) suggest:

"(b) If it appears to the court that the jury has been unable to agree, the court may require the jury to continue their deliberations and may give or repeat an instruction as provided in subsection (a). The court shall not require or threaten to require the jury to deliberate for an unreasonable length of time or for unreasonable intervals.

(c) The jury may be discharged without having agreed upon a verdict if it appears that there is no reasonable probability of agreement."

The problem presented by these standards and case authority is how the trial court is to determine whether the jury has reached an impasse after several hours of deliberation.

The North Dakota, Michigan, Minnesota and Tennessee courts have established guidelines in *State v. Klein,* 1972, N.D., 200 N.W.2d 288; *People v. Luther,* 1974, 53 Mich.App. 648, 219 N.W.2d 812; *State v. Mims,* 1975, 306 Minn. 159, 235 N.W.2d 381; *Kersey v. State,* 1975, Tenn., 525 S.W.2d 139, that such determination be made by communicating in open court. This, of course, would be required only in the absence of agreement by the defendant and his counsel to a written communication.

"If orderly supervision of the docket or convenience of the jury, the parties, the lawyers, or court personnel requires that the judge be informed as to the prospect of the jury's reaching a verdict by a certain time, the proper procedure is to recall the jury to the courtroom. There-

---

**2.** *Allen v. United States,* 1896, 164 U.S. 492, 17 S.Ct. 154, 41 L.Ed. 528.

upon, in the presence of defendant and counsel, the judge should direct the jury foreman to poll the jury in private in the jury room and then to return and inform the judge whether a majority does or does not believe a verdict can be reached by a certain time." *State v. Mims,* 235 N.W.2d at 387.

"(However), [t]he trial court should admonish the jury at the very outset not to indicate how they stand as to conviction or acquittal or whether they entertain a predominant view." *State v. Hutchins,* 1964, 43 N.J. 85, 202 A.2d 678.

See also *People v. Luther,* supra, 219 N.W.2d at 814.

 In each of those cases, communications with the jury in open court was approved. The content of the communications was not held to be coercive even though a definite time was mentioned in the message. Here the communication did not contain any reference to a time and is not in any manner coercive. Since defendant does not object to the form of the communication, but only its substance, we find no error.

### DOUBLE JEOPARDY

After the filing of the original misdemeanor complaint for assault and battery, the state's attorney moved to dismiss the charge and to substitute the felony charge of assault with the intent to do great bodily injury. The form used by the state's attorney recited that the basis for the dismissal was for "insufficient evidence to sustain a conviction" and to allow the filing of a "substituted" charge.

Defendant's trial counsel asserted that the trial on the assault with the intent to do great bodily injury constituted double jeopardy. In his appellate brief, defendant does not cite any authority in support of his double jeopardy claim and we deem it abandoned. Instead, defendant asserts on appeal that the state should be held to have waived the charge of assault and battery. However, the jury instruction on the necessarily included offense of assault and battery was given without any objection by defendant. If there was error, it was waived by defendant's failure to object to the instruction.

The judgment of conviction is affirmed.

DUNN, PORTER and MORGAN, JJ., concur.

WOLLMAN, C. J., concurs in result.