STATE of South Dakota, Plaintiff
and Appellee,

v.

Steven Darrell BITTNER, Defendant
and Appellant.

No. 14011.

Supreme Court of South Dakota.

Argued Oct. 26, 1983.

Reassigned Sept. 11, 1984.

Decided Nov. 14, 1984.

Rehearing Denied Dec. 18, 1984.

Mark W. Barnett, Asst. Atty. Gen., Pierre, for plaintiff and appellee; Mark V. Meierhenry, Atty. Gen., Thomas Amodio, Legal Intern, Pierre, on brief.

David R. Gienapp of Arneson, Issenhuth & Gienapp, Madison, for defendant and appellant.

WOLLMAN, Justice (on reassignment).

This is an appeal from a judgment of conviction for murder in the first degree and attempted murder in the first degree. We affirm.

The appellant, Steven Darrell Bittner, had for a period of some years lived together with his girl friend, Janice Palmer (Palmer), in a house in Huron, South Dakota. On March 30, 1982, at approximately 6:00 a.m., Bittner returned to the house after spending the night out. He awakened Palmer and requested the use of her car; Palmer refused and an argument broke out. Bittner hit Palmer in the face, causing a bloody nose. Palmer then left the house, went to a neighbor's residence, and called the police.

Two Huron police officers, Tom Callies and Andrew Larson, were dispatched to the scene of the disturbance, arriving at approximately 6:30 a.m. Palmer let the officers into the house and indicated that Bittner might be anywhere in the house. She showed them the stairway to the upstairs portion of the house. The officers proceeded up the stairs while Palmer remained below. An individual then came down the steps very rapidly from the second floor and stabbed both officers. The officers fell back down the steps, while the assailant retreated upstairs. After a distress call, the two wounded officers were taken to the hospital. Officer Callies died of his injuries; Officer Larson recovered and was able to testify at trial. Police officers who had responded to the distress call found Bittner in the house and arrested him.

Bittner was charged with first-degree murder and attempted murder. Pursuant to Bittner's motion for change in venue, the trial was held in Watertown, South Dakota. The trial, which lasted from September 27, 1982 to October 14, 1982, resulted in a guilty verdict on both counts. Bittner was sentenced to life imprisonment on the first-degree murder conviction and to twenty-five years' imprisonment on the attempted murder conviction.

Bittner raises six issues on appeal: 1) Did the trial court err in giving instruction number 38? 2) Did the trial court err in refusing to allow testimony of defense witness E. Patrick Gribben? 3) Did the trial court err in refusing to grant an indefinite continuance so that Bittner could secure a

more qualified expert witness? 4) Did the trial court err in denying Bittner's motion to suppress evidence? 5) Did the trial court err in denying Bittner's challenge for cause on six jurors? 6) Did the trial court err in denying Bittner's renewed motion for a change in venue?

We deal first with Bittner's contention that the trial court erred in giving instruction number 38, which states:

When a defendant is charged with crimes which require that certain specific intent or mental state be established in order to constitute the crime or degree of the crime, you must take all of the evidence into consideration and determine therefrom, if, at the time when the crime was allegedly committed, the defendant was suffering from some abnormal mental or physical condition, however caused, which prevented him from forming the specific intent or mental state essential to constitute the crime or degree of crime with which he is charged.

Homicide committed with a design to effect death is not the less murder because the perpetrator was in a state of anger or voluntary intoxication at the time.

However, as to the lesser included offense of Manslaughter in the First Degree and Manslaughter in the Second Degree plus the offense of Attempted Murder and its lesser included offense of Aggravated Assault, if the accused was intoxicated at the time the jury may take into consideration the fact of such intoxication in determining the purpose, motive or intent with which he committed the act.

Bittner maintains that this instruction is not a proper statement of the law and that it disallows consideration of intoxication in a homicide case. We agree.

Two statutes are of primary importance to this issue. SDCL 22–16–6 states: "Homicide committed with a design to effect death is not the less murder because the perpetrator was in a state of anger or voluntary intoxication at the time." SDCL 22–5–5 states:

No act committed by a person while in a state of voluntary intoxication shall be deemed less criminal by reason of his having been in such condition. But whenever the actual existence of any particular purpose, motive, or intent is a necessary element to constitute any particular species or degree of crime, the jury may take into consideration the fact that the accused was intoxicated at the time in determining the purpose, motive, or intent with which he committed the act.

This court has held that whenever a specific purpose, motive, or intent is necessary to constitute a particular crime, the jury may properly consider the voluntary intoxication of the accused to determine the existence of the required purpose, motive, or intent. *State v. Kills Small,* 269 N.W.2d 771 (S.D.1978); *State v. Plenty Horse,* 85 S.D. 401, 184 N.W.2d 654 (1971). Specific intent is an element of the crimes with which Bittner was charged. SDCL 22–16–4. In both *Kills Small, supra,* and *Plenty Horse, supra,* we held that if there is some evidence of intoxication in the record an instruction based upon SDCL 22–5–5 should be given.

There is ample evidence in the record that Bittner had been drinking throughout the evening and late into the night before the murder. Testimony indicates that Bittner drank a number of beers before leaving home on the evening of March 29. He continued to drink at the Plains Lounge later that night. Finally, before going home early in the morning of March 30, he did more drinking at a party. Therefore, the trial court should have given an instruction based upon SDCL 22–5–5 so that the jury could have considered intoxication in determining Bittner's purpose, motive, or intent.

Instruction number 38, as given by the trial court, failed to properly state the law set forth in SDCL 22–5–5. Paragraph one of the instruction allows the jury to consider "abnormal mental or physical conditions," but makes no specific mention of intoxication, as does SDCL 22–5–5. A

reading of paragraphs two and three of the instruction leads one to believe that the jury may consider intoxication on the lesser included offenses, but not on homicide. It is true that other instructions, specifically numbers 12 and 23, required the jury to find specific intent to commit the crime, but they did not raise the factor of intoxication in determining Bittner's intent. Therefore, even when read as a whole the instructions did not inform the jury of the law as found in SDCL 22-5-5.

■ Although we have held that it may be reversible error to fail to give a requested instruction based upon SDCL 22-5-5 where the evidence warrants the giving of the instruction, *see State v. Kills Small, supra,* not every failure to give such an instruction mandates reversal. As we held in *State v. Feyereisen,* 343 N.W.2d 384, 387 (S.D.1984), to establish a claim of prejudicial error a defendant must show "that under the evidence, the jury might and probably would have returned a different verdict if [the requested] instruction had been given." *See also State v. Grey Owl,* 295 N.W.2d 748 (S.D.1980); *United States v. Big Crow,* 728 F.2d 974 (8th Cir. 1984).

■ We conclude that the failure to give Bittner's requested instructions on intoxication at most constituted harmless error. *High Elk v. State,* 344 N.W.2d 497 (S.D. 1984). As is so forcefully pointed out in Judge Miller's concurrence, *infra,* the evidence is overwhelming that Bittner was not so intoxicated as to raise any reasonable doubt concerning his capacity to form the specific intent necessary to commit the crimes with which he was charged. *See Terry v. State,* Ind., 465 N.E.2d 1085 (1984). Bittner was able to arm himself, attack the two officers, retreat upstairs, and then make a contemptuous comment to the arresting officer. These are hardly the actions and words of one who is so intoxicated as to lack the capacity to form the specific intent subsumed within the offenses of first-degree murder and attempted first-degree murder. Accordingly, under the *Feyereisen* test, *supra,* Bittner has

failed to demonstrate that the trial court's refusal to give the requested instructions constituted prejudicial error.

■ We also note that Bittner's proposed instructions regarding intoxication were not correctly worded. Both proposed instructions stated: "The jury may take into consideration the fact that the accused was intoxicated . . . ." These are conclusory in nature and, as such, fail to properly state the law of SDCL 22-5-5. An instruction which does state the law of SDCL 22-5-5, as it applies to the element of purpose, motive, or intent, is found in the South Dakota Pattern Jury Instructions, Volume II, § 2-14-6.

Bittner's second contention is that the trial court erred in refusing to allow testimony of defense witness E. Patrick Gribben (Gribben), an investigator and consultant who had had previous experience as a South Dakota Highway Patrolman and as a United States Marshal. Gribben was asked to re-create the crime scene to determine the lightness, darkness, and visibility within the house at the particular time of day the crime occurred. The purpose of Gribben's testimony was to establish, based upon the re-creation, what an individual coming down the steps the morning of the crime could have observed about persons coming up the steps. Bittner claims that the testimony was admissible either as expert testimony under SDCL 19-15-2 or as lay testimony under SDCL 19-15-1. We disagree.

■ SDCL 19-15-2 (Rule 702) states that if specialized knowledge will assist the jury to understand the evidence or to determine a fact in issue, an expert witness may testify in the form of an opinion or otherwise. This court has held that to qualify as an expert, an individual must have the special knowledge, skill, experience, or training which makes one an expert in that particular field. *Matter of K.A.B.E.,* 325 N.W.2d 840 (S.D.1982); *State v. Best,* 89 S.D. 227, 232 N.W.2d 447 (1975). We have also consistently held that the trial judge has broad discretion concerning qualifica-

tion of experts and admission of expert testimony, and the trial judge will not be reversed absent a clear showing of abuse of that discretion. *State v. Lachowitzer*, 314 N.W.2d 307 (S.D.1982); *State v. Shell*, 301 N.W.2d 669 (S.D.1981).

We conclude that the trial judge did not abuse his discretion by refusing to allow Gribben to testify as an expert. First, Gribben was not a true expert. He had never done a similar reconstruction, nor had he had any training in lighting or how the human eye perceives light. Second, there were eyewitnesses to the lighting conditions in the Bittner house that morning who could have testified as to what they had seen; no expert testimony was needed.

Likewise, we reject Bittner's claim that Gribben should have been allowed to present his testimony as a lay witness under SDCL 19–15–1 (Rule 701).* It is true that Rule 701 allows lay witnesses to give opinion testimony. However, Rule 701 is qualified by SDCL 19–14–2 (Rule 602):

> A witness may not testify to a matter unless evidence is introduced sufficient to support a finding that he has personal knowledge of the matter. Evidence to prove personal knowledge may, but need not, consist of the testimony of the witness himself. This section is subject to the provisions of § 19–15–3, relating to opinion testimony by expert witnesses.

Consequently, a lay witness can give opinion testimony *only* if he has personal knowledge of the matter. 3 Weinstein's Evidence ¶ 701[02] (1982); 3 Louisell and Mueller, Federal Evidence § 259 (1979). Here, Gribben had no personal knowledge of the lighting and visibility in the house on the morning of the crime since he was not present on that day.

Bittner's third contention is that once the trial court rejected the testimony of Gribben it should have granted him an indefinite continuance to secure a more qualified expert witness. The granting or refusing of an application for a continuance is entirely a matter in the discretion of the trial court, and there is no error unless a manifest abuse of discretion is shown. *State v. Smith*, 325 N.W.2d 304 (S.D.1982); *State v. Rosales*, 302 N.W.2d 804 (S.D.1981). Because eyewitness testimony would have been sufficient to show the lighting conditions in the house, there was no manifest abuse of discretion by the trial judge in refusing to grant a continuance to allow Bittner to find an expert.

Bittner's fourth contention is that the trial court erred in denying a motion to suppress certain evidence, specifically a knife that allegedly was the murder weapon. After the crime was committed and the injured officers were taken to the hospital, other police officers stayed at the scene to secure the premises. During that time Roy Burnett, a brother-in-law of Bittner, told the officers that Janice Palmer's baby might still be in the house. The officers also received a phone call from a worried Sherry Burnett informing them that a baby lived in the house. Upon receipt of this information, the officers rushed into the house and up the stairs to see if the child had been harmed in any way. The officers did not know at that time that Palmer had removed the child from the house. While on the stairs, the officers noticed the knife in question. Prior to confiscation of the knife, the police obtained a search warrant. Bittner claims that the search, which resulted in the finding of the knife, was in contravention of his constitutional right to be free from illegal searches and seizures. U.S. Const. amends. IV and XIV.

The general rule is that a valid search warrant is required before police may search any area in which an individual

---

* SDCL 19–15–1 provides:
If the witness is not testifying as an expert, his testimony in the form of opinions or inferences is limited to those opinions or inferences which are (1) rationally based on the perception of the witness and (2) helpful to a clear understanding of his testimony or the determination of a fact in issue.

has a reasonable expectation of privacy, unless a showing is made that the exigencies of the situation make it imperative to proceed without a warrant. *New York v. Belton*, 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981); *State v. Martin*, 274 N.W.2d 893 (S.D.1979). One of the recognized exceptions to this warrant requirement is the emergency exception. The United States Supreme Court has stated that an emergency, warrantless search is justified if the police believe that a person is in need of immediate aid or to see if there are other victims of the crime. In such an emergency situation, the police may seize any evidence that is in plain view. *Mincey v. Arizona*, 437 U.S. 385, 98 S.Ct. 2408, 57 L.Ed.2d 290 (1978). This court has also recognized the emergency exception in *State v. Heumiller*, 317 N.W.2d 126 (S.D.1982), and *State v. Cundy*, 86 S.D. 766, 201 N.W.2d 236 (1972).

■ In the present case, an emergency situation certainly existed. The Huron police had been called to the house because of a domestic violence report. After the arrival of the police, two officers were brutally stabbed. Under such violent and uncertain circumstances, and after being told of the possible presence of a baby in the house, a failure of the police to check for the child would have been a dereliction of duty. The child may well have been injured or in need of assistance. Therefore, the search was well within the emergency exception, and no warrant was required. Since the knife was in plain view during the search, the police could have properly confiscated it even before getting the search warrant.

Bittner's fifth contention is that the trial court erred in denying his challenge for cause directed at six jurors. The voir dire procedure used by the trial court was to compile a pool of sixty individuals who had been accepted by the court for cause. Names were then drawn one at a time and the respective parties exercised peremptory challenges until they waived any further challenges. Bittner used thirteen peremptory challenges while the State used fourteen. At the time Bittner waived his remaining peremptories, there were still twenty potential jurors who could have been drawn. Bittner specifically complains of six potential jurors who had made statements about past experience or opinions, had been objected to by Bittner, yet remained in the pool of sixty because the judge refused to remove them for cause.

■ The law clearly guarantees a criminal defendant the right to a trial by an impartial jury. SDCL 23A–16–3. Jurors may be dismissed for cause if there is actual or implied bias. SDCL 23A–20–12 and SDCL 23A–20–13. However, this court has held that a defendant cannot complain of being denied an impartial jury when he did not exercise all of his peremptory challenges. *State v. Connor*, 86 S.D. 578, 199 N.W.2d 695 (1972).

■ Here, after exercising thirteen peremptory challenges, Bittner waived his seven remaining challenges. He had the chance to remove any or all of the unacceptable individuals from the jury pool, but he waived his right to do so. Therefore, Bittner cannot now complain of failure to receive an impartial jury even though the six challenged individuals were not excused for cause, and we will not reverse the judgment on that basis.

Bittner's final contention is that the trial court erred in denying his renewed motion for change of venue. He claims that the amount of press coverage and information received by the jurors made a fair trial impossible in Codington County, South Dakota.

■ We find this contention to be without merit. A criminal defendant is entitled only to a fair and impartial jury, not a jury composed of individuals who had absolutely no prior knowledge of the facts of the case. *Connor, supra.* The decision as to change in venue is within the discretion of the trial court and will not be reversed unless that discretion is abused. *State v. Wellner*, 318 N.W.2d 324 (S.D.

1982). The record indicates no such abuse of discretion.

The judgment of conviction is affirmed.

HENDERSON, J., concurs.

MORGAN, J., DUNN, Retired Justice, and MILLER, Circuit Judge, concur in part and dissent in part.

MILLER, Circuit Judge, sitting for FOSHEIM, C.J., disqualified.

WUEST, Circuit Judge, Acting as Supreme Court Justice, did not participate.

MORGAN, Justice (concurring in part, dissenting in part).

I dissent from the holding that the trial court erred in giving jury instruction number 38. In my opinion, the trial court correctly stated the law with respect to voluntary intoxication in cases of homicide committed with a design to effect death. SDCL 22–16–6 clearly states that the act is not the less murder because the perpetrator was in a state of voluntary intoxication at the time. This issue has never been before this court and the cases cited in support of giving the voluntary intoxication instruction are inapposite. *State v. Kills Small*, 269 N.W.2d 771 (S.D.1978), involved the offense of burglary and *State v. Plenty Horse*, 85 S.D. 401, 184 N.W.2d 654 (1971), involved forgery.

It is settled law in most jurisdictions that "[t]he Legislature ... except as limited by the state and federal constitutions and federal law, has unquestionable power to define what acts shall constitute criminal offenses and what penalties shall be imposed on offenders." *State v. Moore*, 286 N.W.2d 274, 278 (N.D.1979).

The South Dakota Legislature, in enacting Chapter 22–16, defining homicide, created an exception to SDCL 22–5–5. SDCL ch. 22–16 actually makes three specific provisions with respect to premeditated design: (1) SDCL 22–16–5 says the design may be formed instantly before committing the act; (2) SDCL 22–16–6 states that a state of anger is not a defense; and (3) SDCL 22–16–6 also states that voluntary intoxication is not a defense. It is noteworthy that SDCL 22–16–6 refers only to homicide with design to effect death inasmuch as it is the only homicide that is a specific intent crime. Felony murder, murder in the second degree, and the manslaughter offenses are all general intent crimes. As the majority opinion properly points out, SDCL 22–5–5 is applicable only to specific intent crimes. We are thus faced with a case of statutory construction in which a general statute, SDCL 22–5–5, appears clearly to be in conflict with a specific statute, SDCL 22–16–6. Under our previous holdings, a specific statute prevails.

> We read statutes to give effect to all provisions, ... and multiple provisions covering the same subject are construed to give effect to each statute.... Where there is a specific enactment, that provision prevails over the terms of the general enactment. (citations omitted)

*Hartpence v. Youth Forestry Camp*, 325 N.W.2d 292, 295 (S.D.1982).

Putting aside my basic disagreement with the majority opinion on the holding as I have noted above, I can certainly agree with the disposition as harmless error as Circuit Judge Miller has pointed out in his concurrence in part and dissent in part. Under the facts in this case, it would be unlikely that a jury would arrive at any different verdict. Therefore, I agree with the disposition of the first issue on jury instruction number 38. Furthermore, I concur in the balance of the opinion on the remaining issues.

DUNN, Retired Justice (concurring in part, dissenting in part).

I would concur in the majority opinion except for the finding that the failure of the trial court to instruct the jury on the affect of intoxication in a specific intent crime is harmless error.

This whole sad episode began when defendant appeared at Janice Palmer's home at six o'clock on the morning of March 30, 1982, after some eleven hours of consuming various alcoholic beverages, and de-

manded the keys to her car. Palmer refused, because of Bittner's drinking, and characterized him as being "basically intoxicated" when he came to her home.

Under these facts, the trial court was obligated to give an instruction based on SDCL 22–5–5 to permit the jury to consider intoxication in determining Bittner's purpose, motive, and intent. *State v. Kills Small*, 269 N.W.2d 771 (S.D.1978).

This sudden, savage, senseless stabbing of an unknown officer lends little credence to the majority statement that his actions belied his capacity to form an intent to commit murder. If anything, it adds weight to defendant's request for an instruction on intoxication.

Finally, how can the removal of defendant's only possible defense be characterized as "harmless"? If it is harmless error, in Bittner's case, to refuse the instruction, how could it be prejudicial and reversible error in *Kills Small's* case? However appalled we may be at the slaying of this fine young officer, we must abide by the rules in a government of law.

I would reverse and remand for a new trial.

MILLER, Circuit Judge (concurring in part, dissenting in part).

I agree with Justice Morgan that the trial court did not err in giving jury instruction 38. I would adopt Justice Morgan's position that SDCL 22–16–6 applies to first-degree murder charges and that SDCL 22–5–5 applies to all other offenses involving specific intent. I believe that the trial court's instructions here, taken together, fully and adequately stated the applicable law.

Even applying the law as interpreted in the majority opinion, I am equally of the opinion that the failure of the trial court to give the requested instruction on the effect of intoxication is, at the very most, harmless error.

There is no question but that prior to the incident defendant had consumed alcohol. Arguably, the testimony of his girlfriend, Ms. Palmer, standing alone would justify the giving of the instruction. However, her testimony is substantially eroded by all of the other evidence, especially by defendant's own actions, behavior, manner and comportment.

We have here a brutal, vicious attack, committed in a silent and swift manner, not upon unarmed and inexperienced individuals, but rather upon two armed and experienced policemen.

Prior to the attack defendant came home and watched television. He woke Ms. Palmer and asked her for her car keys. Upon her refusal, they argued and he struck her. When she went upstairs to the bedroom he followed her, carefully and consciously took the child from her, and struck her again. He then followed her downstairs, whereupon she left to telephone the police from a neighbor's house.

The police arrived in a short time. In the interim defendant purposefully armed himself. As the police proceeded up the stairs, he jumped down to the turn or landing of the stairs and charged them rapidly. He stabbed Officer Callies just below the sternum and Officer Larson in the chest and arm, before either knew what was happening. The defendant accomplished the attack so quickly that Officer Larson did not see the thrusted knife that twice penetrated his body. Further, the attack carried with it such force that it slammed Officer Larson into the stairway wall, damaging the plaster.

When one of the officers drew his weapon, defendant had the presence of mind to retreat up the stairs.

The defendant, being aware of the arrival of backup officers and being conscious of his plight, decided to surrender. He even had the presence of mind to extend his hands into the view of the officers so as to indicate that he was not armed. He completely followed the specific instructions of the officers by coming down the stairs slowly, and by turning and facing and leaning against the wall. He even had sufficient presence of mind to tell the officers about a lighted cigarette he had

dropped on the floor. He then followed the instructions of the officers with no difficulty. He walked without assistance and made various conscious, verbal "wise-cracks" to the officers.

When viewing all of the evidence one *must* conclude that the defendant did not in any manner suffer from any abnormal mental or physical condition which impaired or diminished his ability to form the requisite specific intent. Admittedly, he had been drinking, but "so what?" At the time of the attack the defendant possessed the physical and mental attributes of a man acting in a conscious, lucid, quick thinking and coordinated manner which enabled him to carry out this most heinous crime. No jury could possibly have found that he had a diminished capacity to formulate specific intent, even if it had been given the opportunity to consider that issue.

The evidence is clear and undisputed that the defendant knowingly, consciously and intentionally attacked two law enforcement officers, killing one, who were in the performance of their thankless and dangerous duties. His only real defense is that his intent to accomplish the attack was diminished because of his prior voluntary consumption of alcohol. Under the evidence, that defense just doesn't fly.